UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**MICHELE BARDI,**

    **Plaintiff,**

v.                                                  Case No. 8:12-CV-2723-T-27AEP

**CAROLYN W. COLVIN,**
**Acting Commissioner of the United**
**States Social Security Administration,**

    **Defendant.**
_____/

## REPORT AND RECOMMENDATION

The Plaintiff brings this action pursuant to the Social Security Act (the "Act"), as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claim for Supplemental Security Income ("SSI").

Upon a review of the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the ALJ's decision, the administrative record, and the pleadings and memoranda submitted by the parties in this case, and for the reasons set forth herein, I recommend that the Commissioner's decision in this case be **AFFIRMED**.

### I.  Background

The Plaintiff filed for SSI on August 25, 2009, alleging an onset of disability on June 30, 1996. R. 137-38. The Plaintiff's application was denied initially and upon reconsideration. R. 66-67, 78-88. The Plaintiff requested and received a hearing, which was held on May 11, 2011 before ALJ Phylis Pierce (the "Hearing"). R. 36-65. At the Hearing, the Plaintiff amended her date of alleged onset to August 25, 2009. R. 38. In a decision dated June 24, 2011 (the

"Decision"), the ALJ found the Plaintiff not disabled as defined under the Act.  R. 17-28.  The Plaintiff timely exhausted her administrative remedies, and this case is properly before the Court for review under 42 U.S.C. § 405(g).

## II. The ALJ's Decision

When determining whether an individual is disabled, the ALJ must follow the five-point sequential evaluation process established by the Social Security Administration and set forth in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4).  Specifically, the ALJ must determine whether the claimant (1) is currently employed; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals an impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy.  *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004).  The claimant bears the burden of persuasion through step four, and, at step five, the burden shifts to the Commissioner.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).

In her Decision, the ALJ performed the required five-step sequential analysis.  R. 17-28. At step one, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since the date of alleged onset.  R. 13-14.  At step two, the ALJ determined that the Plaintiff suffered from the severe impairments of diabetes mellitus and bipolar disorder.  R. 19-21.  At step three, the ALJ found that the Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments under 20 C.F.R. Part 404, Subpart P, Appendix 1.  R. 21-23.  Next, the ALJ found that the Plaintiff retained the residual functional capacity ("RFC") to perform a reduced range of light work.  R. 23-27.  At step four, the ALJ determined that the Plaintiff did not have any past relevant work.  R. 27.  At step five, based on the testimony of a vocational expert ("VE") at the Hearing, the ALJ found that the Plaintiff was

able to perform the requirements of the representative occupations of a small products assembler, solar/sewing machine operator, and advertising materials distributor. R. 27-28. Based on her finding at step five, the ALJ concluded that the Plaintiff was not disabled under the Act. R. 28.

### III. Standard of Review

The scope of the Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1158 (11th Cir. 2004). Substantial evidence is "more than a scintilla but less than a preponderance. It is such relevant evidence that a reasonable person would accept as adequate to support a conclusion." *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted). If the Commissioner's findings of fact are supported by substantial evidence, they shall be conclusive. 42 U.S.C. § 405(g). Further, when the Commissioner's decision is supported by substantial evidence, the district court will affirm even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The district court "may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." *Foote v. Chater*, 67 F.3d 1533, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (noting that the court must scrutinize the entire record to determine the reasonableness of the factual findings).

## IV. Discussion

The Plaintiff challenges the ALJ's Decision on three grounds:

1) The ALJ's RFC determination was unsupported by substantial evidence;

2) The ALJ's credibility determination was unsupported by substantial evidence because the ALJ erred in her analysis of the required factors; and

3) The ALJ erred at step five of the sequential analysis by failing to ask the VE a complete hypothetical question.

For the reasons discussed below, the Court finds that the ALJ's Decision was based on substantial evidence and comported with applicable legal standards.

### A.   The ALJ's RFC Assessment

First, the Plaintiff argues that the ALJ's RFC assessment was not supported by substantial evidence on record. Specifically, the Plaintiff argues that the ALJ improperly evaluated the medical opinions of both treating and non-examining physicians in determining the Plaintiff's functional limitations. The Social Security regulations "establish a 'hierarchy' among medical opinions that provides a framework for determining the weight afforded each medical opinion." *Belge v. Astrue*, No. 3:09-cv-529-J-JRK, 2010 WL 3824156, at *3 (M.D. Fla. Sept. 27, 2010). Under this hierarchy, "the opinions of examining physicians are generally given more weight than non[-]examining physicians; treating physicians receive more weight that non[-]treating physicians; and specialists on issues within their areas of expertise receive more weight than non[-]specialists." *Id.* (internal citations and quotations omitted). When considering a treating physician's testimony, the ALJ must ordinarily give substantial or considerable weight to such testimony unless "good cause" is shown to the contrary. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004); *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987) (noting that a treating physician's medical opinion may be discounted when it is not accompanied by objective

4

medical evidence); *see also* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d).  Such a preference is given to treating sources because they are likely to be best situated to provide a detailed and longitudinal picture of the medical impairments.  *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997).  Furthermore, the ALJ must specify the weight given to the treating physician's opinion or reasons for giving the opinion no weight, and the failure to do so is reversible error. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).  "Good cause" for rejecting a treating source's opinion may be found where the treating source's opinion was not bolstered by the evidence, the evidence supported a contrary finding, or the treating source's opinion was conclusory or inconsistent with his or her own medical record.  *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004).  Further, "[a]n opinion about whether the claimant is 'disabled' or 'unable to work,' the claimant's residual functional capacity, or the application of vocational factors can never be given controlling weight, even if offered by a treating source, but must be taken into consideration."  *Adamo v. Commissioner*, 365 F. App'x 209, 212 (11th Cir. 2010) (citing 20 C.F.R. § 404.1527(e)(1)-(2)).

In her Decision, the ALJ determined that the Plaintiff had the RFC to perform a limited range of light work.  Specifically, the ALJ found that:

> [T]he claimant has the ability to lift and/or carry 20 pounds occasionally and 10 pounds frequently. She has the capability to stand, sit, and/or walk 6 hours in an 8-hour workday. Her ability to push and/or pull is unlimited. The claimant should avoid concentrated exposure to extreme temperatures, wetness, humidity, noise, vibration, fumes, odors, dusts, gases, poor ventilation, and hazards. The claimant should never climb ladders, ropes, and scaffolds and only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. Mentally, she is limited to unskilled work. She is not capable of interaction with the public, but can occasionally interact with co-workers and supervisors.

R. 23.  In support of this finding, the ALJ evaluated the medical opinions of the Plaintiff's treating, examining, and non-examining physicians.  First, the ALJ analyzed the opinions of Dr.

5

Jacques Aristilde, M.D., who treated the Plaintiff for complaints of pain from December 2009 to November 2010, and from January 2011 to March 2011. R. 23. The Plaintiff first saw Dr. Aristilde on December 11, 2009 with complaints of pelvic pain. R. 527-28. Dr. Aristilde's physical examination of the Plaintiff revealed generally normal findings, including normal range of motion and strength in the Plaintiff's extremities, no gross neurological deficits, and no acute distress throughout her body. R. 527. Dr. Aristilde diagnosed the Plaintiff with diabetes, anxiety, fibromyalgia/myositis, and tachycardia, but did not prescribe the Plaintiff any new medications. R. 527-28. Dr. Aristilde recommended that the Plaintiff return in four weeks. R. 528. The Plaintiff next saw Dr. Aristilde on April 9, 2010 with complaints of neuropathic pain, burning of the feet, and occasional loss of balance. R. 525-26. Dr. Aristilde noted that the Plaintiff's previous pelvic pain had "now resolved after lysis of adhesions," and she had "no change in strength or exercise tolerance," "no headache, no vertigo," and "no numbness" in her muscles. R. 525. Dr. Aristilde's physical examination revealed normal findings consistent with his previous treatment note. R. 525. Dr. Aristilde concluded that "some of [the Plaintiff's] symptoms have underlying psychiatric issues," and the Plaintiff "has not gotten to see the psychiatrist yet." R. 525. In terms of treatment, Dr. Aristilde increased the Plaintiff's dosage of Neurontin and encouraged the Plaintiff to stop smoking, "as it will exacerbate her symptoms." R. 526.

On June 9, 2010, Dr. Aristile completed a Residual Functional Capacity Questionnaire, in which he found that the Plaintiff suffered from fibromyalgia, anxiety, and diabetes. R. 582. Dr. Aristilde noted that the Plaintiff's symptoms included heart palpitations, pelvic pain, and neuropathic pain, which he opined would frequently interfere with the attention and concentration required to perform simple work-related tasks. R. 582. In terms of functional

6

limitations, Dr. Aristilde opined that the Plaintiff could sit for thirty minutes at a time, stand/walk for thirty minutes at a time, walk for two to three blocks without experiencing significant pain, and sit and stand/walk for four hours in a given eight-hour workday.  R. 582.  Further, Dr. Aristilde stated that the Plaintiff would need three to four unscheduled breaks during an eight-hour workday and could only occasionally lift and carry less than ten pounds at a time.  R. 582-83.  Dr. Aristilde did not identify any other psychological or non-exertional limitations in this questionnaire.  R. 583.

The Plaintiff next saw Dr. Aristilde on June 11, 2010 with complaints of a "sore throat for the last 2 days."  R. 523.  On physical examination, Dr. Aristilde observed mostly normal findings consistent with his previous examinations and determined that the Plaintiff's sore throat was "probably [a] viral syndrome."  R. 523.  Dr. Aristilde advised the Plaintiff to take antibiotics only if her symptoms got worse, but otherwise advised to continue with her current medications for her complaints of pain.  R. 523.  Dr. Aristilde also noted that the Plaintiff was "somewhat noncompliant with treatment," and stated that he "[e]xplained to the [Plaintiff that] her neuropathic pain will most likely not improve if she continues to smoke."  R. 523.  The Plaintiff next saw Dr. Aristilde on June 28, 2010 with complaints of "[r]ight flank pain x 4 days," which Dr. Aristilde found "could be due [sic] gynecologic or kidneys."  R. 521.  With the exception of the Plaintiff's newly identified bilateral "flank pain," Dr. Aristilde observed mostly normal findings on physical examination, including normal range of motion and full strength in the Plaintiff's extremities.  R. 521.  In terms of treatment, Dr. Aristilde recommended that the Plaintiff get a transvaginal ultrasound and bilateral renal ultrasound, advised that the Plaintiff continue with current medications, and prescribed Vicodin for the Plaintiff's back pain.  R. 521.  The Plaintiff saw Dr. Aristilde in September and November 2010, and Dr. Aristilde noted similar

findings for similar complaints of pain. R. 517-20. In his September 15, 2010 treatment note, Dr. Aristilde opined that the Plaintiff's "pain [was] probably due to her uterine fibroids," and added the diagnosis of "Leiomyoma of uterus." R. 519. In his November 5, 2010 treatment note, Dr. Aristilde noted that the Plaintiff complained of left shoulder pain and stated that, while she was helping someone to move, a fifty-pound shelf fell on her shoulder. R. 517. Dr. Aristilde advised that the Plaintiff get an x-ray of her shoulder and apply cold compresses to reduce swelling. R. 517. The Plaintiff last saw Dr. Aristilde in January and March of 2011 for complaints of abdominal and knee pain. R. 571-72, 579-80. Dr. Aristilde opined that the Plaintiff's abdominal symptoms were likely due to irritable bowel syndrome, but noted that she continued to smoke one pack of cigarettes per day despite his previous advice. R. 571-72, 579-80. Dr. Aristilde's physical examinations were mostly unremarkable, including no abnormal functional findings related to the Plaintiff's extremities. R. 571-72, 79-80.

In her Decision, the ALJ discussed, in detail, Dr. Aristilde's June 9, 2010 Residual Functional Capacity Questionnaire, but ultimately discounted its findings because they were not bolstered by the medical evidence on record. R. 23. The Plaintiff argues that the ALJ's conclusion was "unfounded as Dr. Aristilde's own findings support his opinion." (Dkt. No. 13 at 18.) However, the Plaintiff fails to cite to any *prior* treatment notes supporting the extreme functional limitations identified in Dr. Aristilde's June 9, 2010 Residual Functional Capacity Questionnaire. In actuality, Dr. Aristilde's June 9, 2010 opinions were made after seeing the Plaintiff on only two prior occasions over the previous six months. *See* 20 C.F.R. § 416.927(c)(2)(i) (noting that "the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion."). It is clear that, having examined the Plaintiff only twice prior to June 9, 2010, Dr.

Aristilde could not have "obtained a longitudinal picture of [the Plaintiff's] impairment," in formulating his RFC opinion. *Id*. Nevertheless, Dr. Aristilde's June 9, 2010 opinion was not supported by the remainder of his treatment notes as well. For instance, despite finding that the Plaintiff was unable to lift even ten pounds occasionally, Dr. Aristilde consistently observed full strength and range of motion in his physical examinations of the Plaintiff. *Compare* R. 582-83 *to* R. 517-28, 571-72, 579-80. In sum, Dr. Aristilde's treatment notes revealed generally normal functionality with a mostly conservative treatment regimen, which did not support the extreme functional limitations identified in his June 9, 2010 Residual Functional Capacity Questionnaire. Thus, the ALJ had good cause for rejecting this opinion.

In assessing the Plaintiff's RFC, the ALJ also relied on the opinions of several other examining and non-examining physicians. The ALJ discussed a December 7, 2009 psychological evaluation conducted by Dr. B.J. Hatton, Ph.D., who diagnosed the Plaintiff with bipolar disorder, panic disorder, generalized anxiety disorder, and alcohol dependence in recent remission. R. 348. Dr. Hatton's mental examination of the Plaintiff revealed that her "speech and language skills were good, and she was able to express her thoughts without difficulty." R. 347. Further, "[h]er thought processes were relevant, coherent, and organized," and there was "no evidence of mania, or psychosis." R. 347. However, Dr. Hatton noted that the Plaintiff "may have problems with short-term memory," and her "insight and judgment appear to be only fair." R. 348. Based on these findings and a review of the evidence available to her, Dr. Hatton concluded that the prognosis for the Plaintiff's "ability to maintain in a competitive work situation is guarded." R. 348.

In her Decision, the ALJ found that Dr. Hatton's opinion was not persuasive because it was inconsistent with other substantial evidence of record. R. 23-24. The ALJ noted that the

"absence of any treatment by a mental health source for a period well in excess of a year provides persuasive evidence that, even absent ongoing treatment, the claimant's mental condition is stable and not disabling." R. 23. The Plaintiff argues that the ALJ should not have "completely discounted" Dr. Hatton's opinion. (Dkt. No. 13 at 15.) However, there is no evidence that the ALJ completely rejected Dr. Hatton's functional findings. Instead, in her RFC assessment, the ALJ incorporated several mental restrictions supported by Dr. Hatton's functional findings, such as limiting the Plaintiff to unskilled work and restricting her interaction with the public. R. 23. The ALJ did, however, reject Dr. Hatton's opinion concerning the Plaintiff's inability to work, and this finding is supported by substantial evidence on record. Further, opinions regarding the Plaintiff's ability to work are not "medical opinions" under the Social Security regulations and are never entitled to any special significance. *See* 20 C.F.R. § 404.1527(d)(2)-(3), (e)(1)-(2) (noting that the Commissioner "will not give any special significance to the source of an opinion on issues reserved to the Commissioner….").

The ALJ also evaluated the consultative opinions of Drs. Minerva Hernandez, Tracey Morse, and Linda O'Neil. R. 24. Dr. Hernandez evaluated the Plaintiff's physical functionality and concluded that the Plaintiff's "allegations of pain and functional limitation is not consistent with the medical evidence on file." R. 479. Thus, Dr. Hernandez found that the Plaintiff was able to perform the exertional demands of light work, but with a number of environmental limitations that were adopted by the ALJ in his RFC assessment. R. 474-81. Dr. Morse evaluated the Plaintiff's mental functionality and concluded that the Plaintiff suffered from, at most, moderate limitations in carrying out detailed instructions, working at a consistent pace, getting along with coworkers and peers, and responding appropriately to changes in the work setting. R. 428-29. In sum, Dr. Morse found that the Plaintiff "can understand, retain, and carry

10

out simple instructions," "can consistently and usefully perform routine tasks on a sustained basis, with minimal (normal supervision), and can cooperate effectively with others in completing simple tasks and transactions." R. 430. The ALJ ultimately incorporated these functional limitations into her RFC assessment. Dr. O'Neil's mental evaluation revealed similar functional limitations, which were also adopted by the ALJ in her RFC assessment.

Overall, there is a dearth of medical evidence that supports the Plaintiff's claim that she is totally disabled. The Plaintiff has failed to direct the Court to medical findings in the record that would compel a contrary RFC assessment. *See Osborn v. Barnhart*, 194 F. App'x 654, 661 (11th Cir. 2006) ("As we have held, the burden is on the claimant to prove that he is disabled...."). Thus, the Court finds that the ALJ's RFC assessment is based on substantial evidence in the record, and the Plaintiff's first argument is without merit.

### B. The ALJ's Credibility Determination

Next, the Plaintiff argues that the ALJ failed to properly assess the Plaintiff's credibility in conjunction with her subjective complaints. In the Eleventh Circuit, the pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). "The standard also applies to complaints of subjective conditions other than pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). In applying the Eleventh Circuit's three-part pain standard, it is within the ALJ's discretion to determine that a plaintiff's claims of pain and other symptoms are not credible. *See Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) ("After considering a claimant's complaints of pain, the ALJ may reject them as not creditable, and that determination

11

will be reviewed for substantial evidence."). "But the ALJ's discretionary power to determine the credibility of testimony is limited by [her] obligation to place on the record explicit and adequate reasons for rejecting that testimony." *See id.* at 839 ("If the ALJ refused to credit subjective pain testimony where such testimony is critical, [he] must articulate specific reasons for questioning the claimant's credibility.").

In her Decision, the ALJ evaluated the Plaintiff's subjective complaints and testimony at the Hearing, but concluded that the Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with [her RFC assessment]." R. 26. In support of this finding, the ALJ noted that, despite her complaints, the Plaintiff was not receiving mental health treatment nor had she received any treatment in approximately one and a half years. R. 26. Further, the medical record "shows [that] she did not appear to follow up on treatment per recommendation," and has become "non-compliant" with her treatment regimen. R. 26. Finally, the ALJ found that the Plaintiff's subjective complaints were not supported by the medical evidence as a whole. R. 26-27. Specifically, the "overall medical consensus has been that the claimant could perform sustained work activity within prescribed limitations, which are adopted in the [RFC assessment] found in this case." R. 27.

The Plaintiff argues that the ALJ should not have relied on the Plaintiff's non-compliance with treatment in finding her not credible because "her psychologist [was] too far away, and she cannot take the bus due to her anxiety." (Dkt. No. 13 at 20.) However, the ALJ's reliance on the Plaintiff's lack of treatment was only one of several reasons given for finding the Plaintiff not entirely credible. More significantly, the ALJ noted that the medical evidence did not support the Plaintiff's subjective complaints, and the Plaintiff does not refute the ALJ's credibility

finding by presenting to the Court objective medical findings confirming the severity of her subjective symptoms. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Instead, the record reveals mostly conservative findings and a relatively conservative treatment regimen. In addition, the functional limitations that were identified by the Plaintiff's physicians were ultimately incorporated into the ALJ's RFC assessment. Since the ALJ properly applied the Eleventh Circuit's pain standard in evaluating the Plaintiff's subjective symptoms and provided adequate reasons for finding the Plaintiff not fully credible, the Court finds that the Plaintiff's second argument is without merit. *See Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992).

### C. The VE's Hypothetical Question

Finally, the Plaintiff argues that the ALJ erred by failing to pose a complete hypothetical question to the VE at the Hearing. After an ALJ finds that a claimant is unable to return to prior work, as was found in this case, "the burden of proof shifts to the [Commissioner] to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing *Gibson v. Heckler*, 762 F.2d 1516 (11th Cir. 1985)). An ALJ may satisfy this burden by propounding hypothetical questions to a VE based on the ALJ's assessment of the claimant's RFC. "In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *See Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002). In asking a hypothetical question, an ALJ is not required to use specific wording when describing a claimant's impairments so long as the hypothetical question accurately reflects the claimant's RFC. *See Maffia v. Astrue*, Case No. 5:09-CV-184-OC-GRJ, 2010 WL 3893711 at *7 (M.D. Fla. Sept. 29, 2010).

In this case, the ALJ posed a hypothetical question consistent with her ultimate RFC assessment. The Plaintiff does not present any new arguments in asserting that the ALJ's

hypothetical was incomplete. Thus, since the Court has already found that the ALJ's RFC assessment and credibility finding were supported by substantial evidence, the Court finds that the ALJ's hypothetical question properly incorporated all of the Plaintiff's functional imitations and was supported by substantial evidence. *See Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002). Thus, the Court finds that the Plaintiff's third argument is without merit.

## V. Conclusion

Accordingly, for the foregoing reasons, it is **RECOMMENDED** that:

1. The Commissioner's final decision in this case be **AFFIRMED**.

2. The Clerk enter judgment accordingly and **CLOSE** the file.

**IT IS SO REPORTED** in Tampa, Florida on January 15, 2014.

_____
ANTHONY E. PORCELLI
United States Magistrate Judge

### NOTICE TO PARTIES

Failure to file and serve written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date it is served on the parties shall bar an aggrieved party from a *de novo* determination by the District Court of issues covered in the report, and shall bar the party from attacking on appeal factual findings in the report accepted or adopted on appeal by the District Court except upon grounds of plain error or manifest injustice. 28 U.S.C. § 636(b)(1)(C); Local Rule 6.02; *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc).

Copies furnished to:

Hon. James D. Whittemore
Counsel of Record